IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

DERYCK RHODES,

                     Plaintiff,                 Civil Action No.

   v.                                    05-CV-836 (FJS/DEP)

M. HOY, *et al.*,

                     Defendants.

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

DERYCK RHODES, *pro se*

FOR DEFENDANTS:

HON. ELIOT SPITZER         STEPHEN M. KERWIN
Attorney General of           Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

      Plaintiff Deryck Rhodes, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action pursuant to 42 U.S.C. § 1983.  In his complaint, which contains two

discrete though interrelated claims, plaintiff asserts that he was assaulted by defendants M. Hoy and E. Carpenter, both corrections officers at the facility in which he was housed at the relevant times, and that the remaining two defendants including defendant Daniels, a grievance supervisor, and Gary Greene, the prison warden, unlawfully interfered with his efforts to pursue the matter internally through the established inmate grievance process.  Plaintiff's complaint seeks the recovery of damages, including for mental anguish and emotional distress.

In response to plaintiff's complaint, defendants Daniels and Greene have moved seeking its dismissal, arguing that plaintiff's allegations regarding their conduct, even if accepted as true, fall short of establishing a constitutional violation since a prison inmate has no constitutional right to participation in the established grievance process.  Because plaintiff's complaint, even when generously construed, fails to allege a constitutional violation on the part of defendants Daniels and Greene I recommend that their motion be granted.

I.    BACKGROUND[1]

---

[1]      In light of the procedural posture of the case, the following recitation is drawn from plaintiff's complaint, which is interpreted in a light most favorable to him, with all inferences drawn and ambiguities resolved in his favor. *Donhauser v. Goord*, 314

2

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Complaint (Dkt. No. 1).  At the relevant times, plaintiff was confined in the Great Meadow Correctional Facility, located in Comstock, New York.  *Id.*

On June 13, 2004, while in route to the facility's dining area for breakfast, plaintiff was directed by defendant Hoy to submit to a "pat-frisk" search.  Complaint (Dkt. No. 1) Attachment ¶ 9.  Defendant Hoy, assisted by defendant Carpenter, proceeded to conduct a search of the plaintiff, during the course of which plaintiff's head was banged against the wall, causing him to suffer injury.  *Id.* ¶¶ 9-10.  Plaintiff was handcuffed and taken to the facility's clinic for medical attention, where he was treated for a laceration above his right eyebrow and bruises to his ribs.  *Id.* ¶¶ 11-13.  As a consequence of the incident plaintiff was issued a misbehavior report alleging several rule violations, ultimately resulting in a Tier III hearing being conducted with mixed findings.[2]

---

F.Supp.2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

[2]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special

In an effort to seek redress for the assault, plaintiff filed a grievance on July 7, 2004 alleging that he had been assaulted by defendants Hoy and Carpenter, and additionally filed a petition urging that disciplinary action be taken against the two corrections officers pursuant to N.Y. Civil Service Law § 75.[3]  Complaint (Dkt. No. 1) ¶ 17.  While plaintiff maintains that his grievance should have been designated as "class forty-nine", relating to claims of staff misconduct, when processing Rhodes' complaint defendant Daniels coded it as a "twenty-seven", which relates to Tier II and Tier III policies.[4]  Complaint (Dkt. No. 1) ¶ 18 & Exh. 2.  Upon review the inmate grievance review committee ("IGRC") recommended that plaintiff's grievance be forwarded to the superintendent, in light of the fact that it involved allegations of staff misconduct.  *Id.* ¶ 19 & Exh. 1.  The

---

Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[3]      That section provides, in pertinent part, that "[a] person described in . . . this subdivision shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section."  N.Y. Civil Service Law § 75.

[4]      Implicit in plaintiff's submission is the assertion that had his grievance been properly coded to reflect that he was claiming staff misconduct, it would have been handled differently than an ordinary inmate complaint.

grievance was ultimately denied on July 26, 2004 by Superintendent

Greene, who asserted in his response that the matter had been

investigated without yielding any evidence that would support plaintiff's

allegations.  *Id.*  That determination was unanimously affirmed on appeal

to the central office review committee ("CORC").  *Id.* ¶ 20 & Exh. 3.

On or about September 8, 2004 plaintiff submitted a second inmate

grievance, alleging that defendant Daniels had falsified the earlier

grievance and that defendant Greene had failed to rectify the error.

Complaint (Dkt. No. 1) ¶ 21 & Exh. 4.  After deadlocking in its

consideration of plaintiff's second grievance, the IGRC forwarded it on to

defendant Greene, who denied it.  Complaint (Dkt. No. 1) ¶¶ 21-22.  Upon

review of that determination, at plaintiff's request, the CORC accepted

plaintiff's grievance in part, noting that the earlier grievance should be

investigated in accordance with DOCS Directive No. 4040, § VIII in light of

the plaintiff's allegations of staff assault.[5]  Complaint (Dkt. No. 1) ¶ 23 &

---

[5]     DOCS Directive No. 4040, § VIII, provides, in pertinent part, that

> (4) If it is determined that the grievance is a bona fide harassment
> issue, the superintendent shall either:
>
> (i) initiate an in-house investigation by higher ranking supervisory
> personnel into the allegations contained in the grievance; or

Exh. 5.  The CORC further directed that the matter be returned for review by that body following the completion of the required investigation.[6] Complaint (Dkt. No. 1) ¶ 23 & Exh. 5.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 5, 2005.  Dkt. No. 1.  On September 30, 2005, following service, two of the named defendants – Corrections Officers M. Hoy and E. Carpenter – jointly interposed an answer to plaintiff's complaint.  Dkt. No. 13.  In lieu of answering,

---

(ii) request an investigation by the inspector general's office or, if the superintendent determines that criminal activity is involved, by the New York State Police Bureau of Criminal Investigation.

(5) Within 12 working days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the IGP clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(6) If the superintendent fails to respond within the required time limit, the grievant may appeal his grievance to the CORC. This is done by filing a notice of decision to appeal with the IGP clerk.

(7) If the grievant wishes to appeal the superintendent's response to the CORC, he must file a notice of decision to appeal with the inmate IGP clerk within four working days of receipt of that response.

7 N.Y.C.R.R. § 701.11

[6]     There is no indication in plaintiff's complaint as to the results of the ensuing investigation.

however, the remaining two defendants moved, also on September 30,

2005, seeking dismissal of plaintiff's claims against them.  Dkt. No. 14.  In

their motion, defendants Daniels and Greene argue that plaintiff's

complaint fails to implicate any participation on their parts in the

constitutional violations alleged, and as such they are entitled to dismissal

of plaintiff's claims against them.  Plaintiff has since responded to

defendants' motion in a submission filed with the court on October 21,

2005.  Dkt. No. 16.

Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, applying a standard which is neither

controversial nor rigorous in its requirements.  Under that provision, a

court may not dismiss a complaint unless "'it appears beyond doubt that

7

the plaintiff can prove no set of facts in support of his claim which would

entitle him [or her] to relief.'"  *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir.

2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102

(1957)).  In deciding a Rule 12(b)(6) dismissal motion, the court must

accept the material facts alleged in the complaint as true, and draw all

inferences in favor of the non-moving party.  *Cooper*, 378 U.S. at 546, 84

S. Ct. at 1734; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300

(2d Cir.) (citation omitted), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153

(2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005)

(Kahn, J.).  The court's determination as to the sufficiency of a complaint

must take into consideration the fact that the governing rules require only

that the defendant be afforded "fair notice of what the plaintiff's claim is

and the grounds upon which it rests."  *Conley*, 355 U.S. at 47, 78 S. Ct. at

103; *see Phillips v. Girdich*, 408 F.3d 124, 127-29 (2d Cir. 2005).

When assessing the sufficiency of a complaint against this

backdrop, particular deference must be afforded to a *pro se* litigant; a

court must generously construe a *pro se* plaintiff's complaint when

determining whether it states a cognizable cause of action.  *Davis*, 320

F.3d at 350 (citations omitted).  A complaint drafted by an uncounselled

8

plaintiff should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997) (citation omitted).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim could potentially be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"). _

### B.    Procedural Due Process Violation

Plaintiff's claims against defendants Daniels and Greene revolve around actions taken with regard to the first grievance filed by him, complaining of the assault upon him by two prison workers, as well as their failure to rectify the error when responding to his second grievance, which focused upon the alleged falsification of grievance documents. Defendants maintain that these allegations, even if true, would not support the finding of a constitutional violation.

The establishment and implementation of an administrative grievance procedure affords prison inmates a means for airing of

9

concerns regarding prison conditions that can be resolved prior to commencement of formal litigation, and such a process can serve as an effective mechanism for dealing with such internal matters without having to burden the courts with potentially unnecessary litigation.  Toward that end, as an encouragement for inmates to pursue this avenue of redress, the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), precludes commencement of an action brought to address prison conditions, including under 42 U.S.C. § 1983, until internal available administrative remedies are fully exhausted.  42 U.S.C. § 1997e(a).

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The New York Inmate Grievance Program consists of a three-step review process.  First, a written grievance is submitted to the IGRC within fourteen days of the incident.[7]  7 N.Y.C.R.R.

_____

[7]     The Inmate Grievance Program supervisor may waive the timeliness of the

§ 701.7(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  7 N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.7(b).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the CORC, which makes the final administrative decision.  *Id.* § 701.7(c).  Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in federal court.  *Reyes v. Punzal*, 206 F.Supp.2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite the fact that New York prison inmates are required to avail themselves of this established inmate grievance procedure as a necessary predicate to commencing an action complaining of prison conditions, and resort to that grievance process is regarded as protected activity under the First Amendment which insulates inmates against retaliation for engaging in such activity, *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), there is no constitutional right of access to the

---

grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.7(a)(1).

established inmate grievance program.  *Davis v. Buffardi,* No. 0:01-CV-0285, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted); *Shell v. Brzezniak*, 365 F. Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citations omitted); *Cancel v. Goord*, No. 00. CIV. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation fo such procedures does not give rise to a claim under § 1983") (citations omitted).  While the Constitution does mandate that inmates be afforded access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 823, 97 S. Ct. 1491, 1495 (1977), actions such as those alleged on the part of defendants Daniels and Greene are not tantamount to interference with that right, since under the PLRA a plaintiff whose access to the grievance process has been hindered or foiled by actions of prison officials are excused from the PLRA's exhaustion requirement and permitted to file suit without having completed that process.  *See Hemphill*

*v. New York*, 380 F.3d 680, 686-91 (2d Cir. 2004).

In addition to arguing that the interference by defendants Greene and Daniels with his right of access to the grievance procedure is in and of itself a constitutional violation, plaintiff maintains that their actions were tantamount to a deprivation of procedural due process. The lynchpin of a procedural due process claim is a showing that the plaintiff has been deprived of a cognizable property or liberty interest, without due process of law. *See Ferrara v. Superintendent, New York State Police*, 26 F.Supp.2d 410, 413 (N.D.N.Y. 1998) (Kahn, J.) In this instance, plaintiff's complaint fails to disclose that he suffered any such deprivation as a result of defendants' alleged actions. I note in that regard that plaintiff's complaint fails to disclose the suffering of any injuries as a result of defendants' actions. While defendant Daniels may have miscoded plaintiff's grievance, thereby resulting in it have been improperly routed and handled, it appears that the error was remedied, with the grievance ultimately having been treated as involving staff misconduct and having been referred by the CORC for investigation.

For all the foregoing reasons it does not appear that plaintiff has suffered a constitutional deprivation at the hands of defendants Daniels

13

and Greene.  I therefore recommend that those defendants' motion

seeking dismissal of plaintiff's claims against them be granted.

> C.    Leave to Replead

Ordinarily, a *pro se* plaintiff whose claims are found to be insufficient

to withstand scrutiny under Rule 12(b)(6) should be granted leave to

replead at least once to afford him or her the opportunity to cure any

perceived deficiencies and assert a proper claim.  *Branum*, 927 F.2d at

704-05.  When, however, in reviewing the factual allegations lodged in a

complaint it is clear to the court that amendment would be futile, and that

no cognizable claim could be asserted based upon the circumstances

presented, leave to replead may be denied.  *Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000) ("The problem with [pro se plaintiff's] causes

of action is substantive; better pleading will not cure it.  Repleading would

thus be futile.  Such a futile request to replead should be denied.")  In this

instance I make such a finding, concluding that the claims deemed

dismissible in this motion are futile and, accordingly, recommend that

plaintiff be denied the opportunity to replead.

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's claims in this action against defendants Greene and

14

Daniels are limited to their having allegedly mishandled plaintiff's grievance challenging an alleged assault upon him by two corrections officers at Great Meadow.  Because plaintiff, as a prison inmate, does not enjoy a constitutional right of access to the grievance process, and in any event there is no indication that plaintiff suffered any constitutional injury or deprivation as a result of the actions of defendants Daniel and Greene, I recommend that the dismissal motion be granted and plaintiff's claims against them be dismissed.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion be GRANTED, and plaintiff's claims against defendants Daniels and Greene be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties electronically and/or by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:     August 28, 2005
           Syracuse, NY

G:\prisoner\rhodes.wpd